HD
AV

Rcv'd by: _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

USDC- GREENBELT
'23 JAN 25 AM11:37

)
WARREN MATTHEW GIDDINGS,    )
)
    Plaintiff,    )
)    Civil Action No.: 21-cv-3166-LKG
v.    )
)    Dated: January 25, 2023
CORIZON, *et al.*,    )
)
    Defendants.    )
)

**MEMORANDUM OPINION**

Self-represented Plaintiff Warren Matthew Giddings filed the above-captioned 42 U.S.C. § 1983 civil rights action against Corizon Health, Inc. ("Corizon") and "Mr. Rory,"[1] and later added a Maryland Correctional Training Center ("MCTC") nurse and "Centurion Behavioral Health Staff" ("Centurion") as defendants. *See* ECF Nos. 1, 12. In the complaint, Plaintiff expressed concern that Defendant Rory's "nonchalant attitude towards [his] rapidly increasing liver levels will [result in] liver failure." ECF No. 1. Construed liberally, Plaintiff's complaint raises a claim of deliberate indifference to his medical needs. He seeks monetary damages and injunctive relief. *Id.* at 5.

Before Defendants' response was due, Plaintiff filed a Motion for Immediate Injunction requesting mood stabilizers (ECF No. 16), as well as two Motions to Supplement the complaint seeking to add claims unrelated to the issue raised in the initial complaint and against a new set of defendants (ECF Nos. 11, 19). Plaintiff also filed a Motion to Compel certain records, reports, and policies. ECF No. 24.

On July 28, 2022, Defendant Corizon filed a Motion to Dismiss or, Alternatively, for Summary Judgment. ECF No. 29. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court informed Plaintiff that the failure to file a memorandum in opposition to Corizon's motion could result in dismissal of the Complaint. ECF No. 31. On August 11, 2022, Plaintiff filed a Motion to Produce Corizon's motion, stating that he had not yet received a copy. ECF No.

---

[1] Plaintiff later refers to Defendant Rory as "Dr. Rohrer." *See* ECF No. 9.

33.  However, on August 16, 2022, Plaintiff filed a response in opposition.  ECF No. 34.  On August 25, 2022, Corizon replied (ECF No. 35), and thereafter, Plaintiff filed a Motion for Leave to File a Surreply (ECF No. 36).

This Court deems a hearing unnecessary.  *See* Local Rule 105.6 (D.Md. 2021).  For the reasons set forth below, Corizon's motion shall be granted.  Furthermore, although the remaining Defendants have not been served with the Complaint, Plaintiff's claims against them will be dismissed pursuant to 28 U.S.C. § 1915A.  Plaintiff's Motion for Leave to File a Surreply will be granted, *nunc pro tunc*, and his remaining motions will be denied.

## I.    BACKGROUND

Plaintiff's complaint is not a model of clarity.  Construed liberally, it appears Plaintiff is alleging that his psychiatrist, presumably Dr. Rohrer (previously referred to as Mr. Rory), allowed his "liver values to get dangerously low" for several months during his incarceration at MCTC, to the point that a Corizon medical provider suspected he had hepatitis.  ECF No. 1 at 5; ECF No. 9 at 2.  Plaintiff believes, based on his medical provider's opinion, that the abnormal liver values were caused by prescribed medication, which Dr. Rohrer refused to discontinue.  ECF No. 1 at 3.  Plaintiff fears that Dr. Rohrer's deliberate indifference to his medical needs will cause his liver to fail.  *Id.* at 3-4.  He claims that Dr. Rohrer's failure to properly treat him has caused him "strange pains internally" and depression.  *Id.*

In a supplement to the complaint, Plaintiff states that his abnormal liver values were first detected in the middle of 2021, and Dr. Rohrer did not take any action until October or November of that year.  ECF No. 9 at 2.  In any event, Defendant MCTC Nurse continued to provide the "problematic . . . medication," Lexapro, into January 2022.  *Id.* at 2-3; ECF No. 5.

Corizon was the contracted medical provider for the Maryland Department of Public Safety and Correctional Services ("DPSCS") between January 1, 2019, and May 4, 2022.  Decl. of Kasahun Temesgen, M.D., ECF No. 29-2 at ¶ 2.  On May 5, 2022, Corizon was replaced by YesCare.  *Id.*  Neither Corizon nor YesCare provide behavioral health services to DPSCS inmates; rather it is provided by Centurion Health.  *Id.* at ¶ 3.

According to Corizon, Plaintiff has a history of hypothyroidism, bipolar disorder, joint pain, and morbid obesity.  Med. Records, ECF No. 30 at 28, 51.  Plaintiff also has a history of noncompliance with medications and improper use of drugs while incarcerated.  *Id.* at 313, 366.  On July 6, 2021, Plaintiff had a scheduled visit with a nurse practitioner, who renewed his

2

medication, reviewed his laboratory testing results, and noted that his liver enzyme levels were elevated. *Id.* at 24. Specifically, Plaintiff had high levels of alanine aminotransferase ("ALT") and aspartate aminotransferase ("AST"), two of the liver enzymes that are used to assess liver function. ECF No. 29-2 at ¶ 15. Elevated ALT and AST levels are common in obese individuals and may be caused by chronic alcohol consumption or prescription drugs. *Id.* There is no specific treatment, although losing weight helps to stabilize elevated ALT and AST levels. *Id.* As a result, the nurse discontinued Plaintiff's Tylenol prescription, encouraged him drink more fluids and abstain from alcohol, and advised him as to appropriate diet and salt intake. *Id.* The nurse also ordered muscle rub for pain, a chronic care appointment, and additional laboratory testing. *Id.*

On August 18, 2021, Plaintiff was seen by a physician at MCTC for a chronic care visit. ECF No. 30 at 28. The physician noted that Plaintiff was morbidly obese and discussed appropriate lifestyle changes, such as regular exercise and a low carbohydrate and low-fat diet. Upon examination, Plaintiff was in no acute distress and reported mild pain with motion of his right foot but exhibited no other abnormalities. *Id.* The physician renewed Plaintiff's muscle rub and hypothyroidism prescriptions and ordered a chronic care appointment and laboratory testing. *Id.*

On August 31, 2021, Plaintiff was seen in behavioral health for noncompliance with his prescribed medications. *Id.* at 366. According to medical staff, Plaintiff was "noncompliant with 4 out of 7 doses of Lexapro and Lithium between 8/15/2021 and 8/21/2021." *Id.* He was educated on the importance of being compliant with prescribed medications and the risks associated with being noncompliant, as well as the possible consequences of continuing to be noncompliant with his medication order. *Id.*

On October 6, 2021, Plaintiff's laboratory testing revealed high ALT and AST levels. *Id.* at 180. Between October 14 and November 16, 2021, he was seen by medical staff seven times. *Id.* at 32-50. On November 30, 2021, Plaintiff was seen in chronic care by a nurse practitioner who noted that his liver function was high, though he was in no apparent distress and exhibited no abnormalities upon physical examination. *Id.* at 51. Plaintiff reported that his psychiatry medications had been adjusted. *Id.* In response, the nurse advised Plaintiff to drink more fluids, requested a hepatic function laboratory test, and ordered muscle rub for his complaints of lower back pain. *Id.*

On December 8, 2021, Plaintiff underwent laboratory testing which showed elevated AST and ALT levels. *Id.* at 184. During a December 19, 2021 medical visit, a MCTC nurse referred

Plaintiff to the behavioral health department for evaluation of his medications. *Id.* On December 21, 2021, it was noted that Plaintiff declined evaluation by the Psychology Department and refused to sign the refusal of care form. *Id.* at 140.

On December 22, 2021, Plaintiff was transferred to the Maryland Correctional Institution in Hagerstown ("MCIH"). *Id.* at 64. On December 29, 2021, Dr. Alan Rohrer, a psychiatrist, ordered testing of Plaintiff's liver enzymes and a lower dose of Lexapro to be tapered off until the laboratory testing results were available. *Id.* at 316-19.

On January 4, 2022, Plaintiff underwent laboratory testing which showed elevated AST and ALT levels. *Id.* at 188. Plaintiff was also seen by a behavioral health provider, to whom he reported a history of using marijuana, alcohol, K-2 (a synthetic cannabinoid), and Suboxone (a medication that treats narcotic dependence) during his incarceration, including on the date of his facility transfer. *Id.* at 313. During that visit, Plaintiff expressed concern that his prescribed medication was causing liver issues. *Id.* The provider consulted with the psychiatrist, who stated that "the issue is being addressed and the blood work was done last night." *Id.*

On January 17, 2022, Plaintiff returned to behavioral health chronic care, at which time it was noted that he was no longer prescribed Lexapro as of January 3, 2022, following a report of elevated liver enzymes. *Id.* at 295. The provider ordered liver function tests and noted that Plaintiff's Suboxone and K-2 use could "also be a factor" in causing his elevated liver enzymes. *Id.* Plaintiff underwent laboratory testing on January 19, 2022, again showing elevated AST and ALT levels, but lower than the prior result. *Id.* at 189. On January 28, 2022, a nurse saw Plaintiff and referred him to a provider to discuss his laboratory testing results. *Id.* at 69. She also referred Plaintiff to the psychology department to request laboratory values for his medication. *Id.* On January 31, 2022, Plaintiff was seen in behavioral health chronic care, at which time he reported that he "self-discontinued the Lexapro weeks before the taper was to finish." *Id.* at 287. The provider reviewed the lab results with Plaintiff, noted that his "LFT's are improving," and discussed how Plaintiff's recreational drug use may be the cause of the abnormal tests. *Id.*

Between February 6 and March 7, 2022, Plaintiff had six visits with medical staff. *Id.* at 72-84. On March 10, 2022, Plaintiff underwent laboratory testing which showed normal AST levels and elevated ALT levels. *Id.* at 91. On April 1, 2022, a behavioral health nurse saw Plaintiff and noted that Plaintiff appeared to be attempting to manipulate his care. *Id.* at 253-54. On April 11, 2022, during a behavioral health chronic care visit, Plaintiff "wanted to debate his beliefs about

4

what should be done next." *Id.* at 243. The provider explained her "duty to do him no harm" and that she would be "taking the safest course regarding his medication." *Id.*

On May 16, 2022, Plaintiff retuned for a behavioral health chronic care visit. *Id.* at 226. During that time, Plaintiff was not on any psychiatric medications because of his elevated liver enzyme levels. *Id.* He freely admitted that he had been taking medication from another inmate and that he did not know what he was taking. *Id.* The provider educated Plaintiff that this practice was unacceptable, but Plaintiff acted as if he had done no wrong and demanded to be prescribed medication despite an exam that was within normal limits. *Id.* After the provider declined, Plaintiff became demanding and agitated, and was asked to leave. *Id.*

In his opposition response to Corizon's motion, Plaintiff faults Corizon for incidents not mentioned in the initial complaint including: delaying treatment of his right eye and right shoulder, refusing to take him to a medical dispensary, failing to keep blood draw equipment in stock, and delaying blood pressure checks. ECF No. 34-1 at 4-5. With regard to his liver levels, Plaintiff faults Corizon for continuing to administer Lexapro through January 2022, claiming that Centurion staff ordered its discontinuation on September or October 2021. *Id.* In support of this assertion, he attaches a copy of his medication chart at MCTC dated September and November 2021. ECF No. 26-2 at 3, 7. The September chart shows that Dr. Rohrer approved both a 20mg and 10mg dose through November 19, 2021. *Id.* Meanwhile, the November chart reflects that the 10mg dose was approved through March 19, 2022, and the 20mg dose until January 28, 2022. *Id.*

## II.   PLAINTIFF'S MOTIONS

After supplementing his complaint to include Defendants MCTC Nurse and Centurion, Plaintiff filed a Motion to Supplement seeking to add claims unrelated to the underlying cause of action and against a different set of defendants. ECF No. 11. Specifically, they involve loss of sight in his right eye, anxiety, hyperthyroid issues, abdominal pain, and blood work, as well as failure to protect and excessive force claims against correctional officers. *Id.* Thereafter, Plaintiff filed another Motion to Supplement his complaint, this time seeking to add claims of cruel and unusual punishment, retaliation, failure to protect, negligence, and malpractice, arising from his incarceration at MCIH. Because Plaintiff's filings do not describe events relating to the original

allegations, *i.e.*, deliberate indifference to his abnormal liver levels, they do not qualify as supplemental pleadings under Rule 15(d).  Thus, the Motions to Supplement shall be denied.[2]

Likewise, his Motion for Immediate Injunction requesting mood stabilizers (ECF No. 16), which is unrelated to the claim raised here, shall be denied.  In any event, because as detailed below, Plaintiff cannot succeed on the merits of this case, he is not entitled to injunctive relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (stating that in order to obtain a preliminary injunction, a plaintiff must establish that (1) the plaintiff is likely to succeed on the merits, (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the plaintiff's favor, and (4) an injunction is in the public interest); *see also Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011)

Plaintiff also filed a Motion to Compel Defendants to produce certain records, reports, and policies, which the Court construes as a motion for discovery.  ECF No. 24.  As no scheduling order has been entered and there has been no order issued by the Court with respect to discovery, Defendants are not obliged to engage in discovery in this case.  *See* Local Rule 104.4 (D. Md. 2021).  Accordingly, that Motion will be denied.

Also pending is Plaintiff's Motion for Court to Produce Corizon's dispositive motion.  ECF No. 33.  Because Plaintiff has since filed his opposition to Defendant's Motion, it seems he has received the requested document.  Thus, this Motion shall be denied as moot.

Lastly, Plaintiff has filed a Motion for Leave to File a Surreply, which includes his proposed arguments.  ECF No. 36.  The Motion shall be granted, *nunc pro tunc*, and the Court shall consider Plaintiff's surreply.

## III.   STANDARD OF REVIEW

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Legal conclusions or conclusory statements do not suffice. *Id.*  A court must examine the complaint as

---

[2] The Court notes that Plaintiff has pursued some of the proposed claims in separate suits at *Giddings v. Charriez, et al.*, Civil Action No. GJH-21-2735; *Giddings v. Green, et al.*, Civil Action No. PJM-21-2850; and *Giddings v. Centurion Behavioral Health Staff, et al.*, Civil Action No. DLB-22-2516, all of which remain pending before this Court.

a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Corizon's Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF No. 29. Motions styled in this manner implicate the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp.2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the Court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

Because Corizon's Motion is titled as a motion to dismiss or, alternatively, for summary judgment, Plaintiff was on notice that the Court could treat it as one for summary judgment and rule on that basis. Thus, the Court will review Plaintiff's claims under the Rule 56(a) standard and will consider the exhibits filed in support of the dispositive motion.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis

in original).  A court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568-69 (4th Cir. 2015).  At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).  The Court is mindful that Plaintiff is a self-represented litigant.  A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

IV.   **DISCUSSION**

   A.    **Respondeat Superior**

   Corizon contends that it is entitled to summary judgment as Plaintiff does not state any specific allegations against Corizon, and to the extent he seeks to hold Corizon responsible as the employer of MCTC medical staff, there is no respondeat superior liability as it is well established that the doctrine of respondeat superior does not apply to claims asserting constitutional deprivations brought pursuant to 42 U.S.C. § 1983.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).  In this respect, a private corporation that steps into the shoes of a state actor cannot be held liable for a § 1983 claim solely upon a theory of respondeat superior.  *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Maryland Dep't of Pub. Safety and Corr. Servs.,* 316 Fed. Appx. 279, 282 (4th Cir. 2009).  Rather, liability to the entity itself attaches only when the constitutional deprivation resulted from the entity having implemented an unconstitutional policy, custom, or practice.  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).  Accordingly, to survive challenge, Plaintiff must point to some evidence that his prescription for Lexapro was continued pursuant to a policy, custom, or practice, and that continuation proximately cause the alleged constitutional violation.  *Monell*, 436 U.S. at 690; *see also Jordan ex rel Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994).

No evidence exists to support such a claim.  Therefore, Corizon is entitled to judgment on this basis alone.

**B.      Deliberate Indifference**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The Fourth Circuit has observed that "not all Eighth Amendment violations are the same:  some constitute 'deliberate indifference,' while others constitute 'excessive force.'"  *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986)). In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Thompson*, 878 F.3d at 97. Plaintiff's allegation that Defendants failed to discontinue his Lexapro prescription amounts to a claim for denial of adequate medical care.  To establish this claim, a plaintiff must demonstrate that a defendant's acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The Fourth Circuit has characterized the applicable standard as an "exacting" one.  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available.  *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001) ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").  "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"  *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

9

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.*; *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."). Moreover, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106).

An inmate's mere disagreement with medical providers as to the proper course of treatment also does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial risk of serious harm.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 837); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Based on the record presented to this Court, it appears that MCTC medical and behavioral staff continuously monitored Plaintiff's liver condition once it was discovered that his ALT and AST levels were elevated. Even assuming that Lexapro was the cause of Plaintiff's elevated liver levels as he suggests, his claim fails. Consistent with Corizon's exhibits, the medication charts submitted by Plaintiff reflect that Lexapro had been approved through March 19, 2022; thus, Corizon staff cannot be found to have been deliberately indifferent to Plaintiff's needs where they opted to taper Lexapro before completely discontinuing it on January 3, 2022. Plaintiff's disagreement regarding the course of treatment, in and of itself, is not enough to support a

10

deliberate indifference claim.   Moreover, as Plaintiff has not demonstrated that he suffered a serious or significant injury, his claim also fails in this respect.[3]   As such, Corizon's motion, construed as a motion for summary judgment, shall be granted.

### C.      Unserved Defendants

As to Defendants Dr. Rohrer, MCTC Nurse, and Centurion Behavioral Health Staff, who have not been served, because Plaintiff's claims fail for the reason stated above, and the theory of liability for these unserved Defendants does not differ in any material way, the Court will dismiss the claims against them as well.   *See* 28 U.S.C. § 1915(e)(2), 1915A(b) (2018) (requiring a court to screen a complaint filed by a prisoner against government officials or filed *in forma pauperis* and dismiss it if it fails to state a plausible claim for relief).

## V.      **CONCLUSION**

For the foregoing reasons, Corizon's Motion to Dismiss or, Alternatively, for Summary Judgment, shall be granted and Plaintiff's claims against the remaining Defendants shall be dismissed.   Plaintiff's Motion for Leave to File a Surreply will be granted, *nunc pro tunc*, and his remaining motions will be denied.

A separate Order follows.

LYDIA KAY GRIGGSBY
United States District Judge

---

[3] To the extent Plaintiff raises state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and thus will dismiss such claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).